# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## PINE BLUFF DIVISION

**NICHOLAS R. HOLLOWAY**                                              **PETITIONER**

**5:17CV00340 JM/PSH**

**WENDY KELLEY, Director,**
**Arkansas Department of Correction**                                 **RESPONDENT**

## FINDINGS AND RECOMMENDATION

### INSTRUCTIONS

The following recommended disposition has been sent to United States District Court Judge James M. Moody Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court Clerk within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

### DISPOSITION

Petitioner Nicholas R. Holloway ("Holloway") seeks a writ of habeas corpus pursuant to 28 U.S.C. §2254. Holloway is currently in the custody of the Arkansas Department of Correction (ADC) following his 2014 guilty plea in the Lonoke County Circuit Court on the charges of first-degree murder and tampering with physical evidence.[1] Holloway was sentenced to a total of 420 months' imprisonment. Having entered a guilty plea, no direct appeal was available. Holloway filed a Rule 37 petition for postconviction relief with the trial court in July 2014, alleging two

---

[1] Holloway was originally charged with capital murder, tampering with physical evidence, and committing a felony with a firearm. Holloway agreed to testify against his co-defendant, Jeremy Davis, as part of the plea agreement.

1

instances of ineffective assistance of counsel.[2] Holloway was represented by counsel, Danny R. Williams, in the Rule 37 proceeding. Following an evidentiary hearing, the trial court denied postconviction relief in a December 2014 decision. Holloway filed a notice of appeal but did not timely lodge the record. Two extensions were granted to allow Holloway to file the transcript. Even with the extensions, the record was not timely lodged.[3] In May 2016, Holloway filed a motion for rule on the clerk seeking permission to lodge the record and proceed with the appeal. This request was granted by the Supreme Court of Arkansas in June 2016. Ultimately, the trial court's decision affirming the trial court's denial of the Rule 37 petition was affirmed. *Holloway v. State*, 2016 Ark. 265. In denying relief, the Supreme Court of Arkansas found Holloway had abandoned his two claims of ineffective assistance of counsel because his brief failed to include arguments supporting those claims. Thus, the merits of the claims of ineffective assistance of counsel were not addressed by the Supreme Court of Arkansas.

In his federal habeas corpus petition, Holloway claims he received ineffective assistance of counsel in the following ways:

(1) his appellate attorney abandoned his ineffective assistance of trial counsel claims;

---

[2] Holloway claimed counsel was ineffective because: (1) he failed to seek suppression of incriminating evidence seized from his cellphone; and (2) counsel misinformed him with regard to the effect of his guilty plea by telling him he would only serve 21 years of the 35 year sentence. Holloway also complained that counsel failed to file any pretrial motions.

[3] Thereafter, Holloway twice sought a writ of error coram nobis with the trial court. Both of these efforts were filed *pro se*. The first petition was filed in December 2015, and in it Holloway alleged his guilty plea was involuntary and unintelligently made due to his inability to understand the charges and proceedings. He also alleged the prosecution misled him about the time to be served. This petition was denied in February 2016, and Holloway filed a notice of appeal. The second petition was filed in March 2016. In this petition, Holloway faulted his attorney for failing to file the appellate record in the Rule 37 proceeding, and he also stated he was unable to understand the plea documents he signed to enter the guilty plea. The trial court denied the second petition for writ of error coram nobis in March 2016, and Holloway filed a notice of appeal.

(2) his trial attorney failed to seek the suppression of evidence connected with the seizure of his cellphone;

(3) his trial attorney misinformed him about the amount of time he would serve as a result of his guilty plea; and

(4) his trial attorney failed to provide information to him about his right to challenge and exclude cellphone data from a trial.

Liberally construing the petition, Holloway also claims, as a fifth ground for relief, that he was actually innocent.

By Court Order of May 1, 2018, Holloway was notified that respondent Wendy Kelley ("Kelley") contends claims 2, 3, and 4 are procedurally barred in this Court due to Holloway's failure to adequately pursue these claims in state court, as required by *Wainwright v. Sykes*, 433 U.S. 72 (1977), and its progeny. Holloway was given an opportunity to and did address this contention by filing a pleading on or before June 1, 2018. Docket entry no. 11.

*Procedural Bar of Claims 2, 3, and 4.*

The Court will first address Kelley's procedural bar claims. Kelley contends claims 2, 3, and 4 are procedurally barred because Holloway failed to adequately present these claims in his state Rule 37 appeal. The basic concept of procedural default is that a federal court should not reach the merits of a litigant's habeas corpus allegation if he has procedurally defaulted in raising that claim in state court: that is, if he was aware of the ground, but failed to pursue it to a final determination. The exception created by the Supreme Court permits such an allegation to be addressed if the litigant can establish "cause" for his failure to assert the known ground and "prejudice" resulting from that failure. *See Clark v. Wood*, 823 F.2d l24l, l250-5l (8th Cir. l987); *Messimer v. Lockhart*, 822 F.2d 43, 45 (8th Cir. l987).

We are mindful that *Martinez v. Ryan*, 566 U.S. 1 (2012), and subsequent cases demonstrate there are exceptions to the general rule of procedural default. We are also aware that the procedural bar analysis need not be performed in every case and are guided by the following language of the Eighth Circuit Court of Appeals:

> In cases such as this, it might well be easier and more efficient to reach the merits than to go through the studied process required by the procedural default doctrine. Recent commentary points up the problems with the cause and prejudice standard:
>> [T]he decision tree for habeas review of defaulted claims is intricate and costly. . . . In essence, *Sykes* and *Strickland* require habeas lawyers and federal judges and magistrates to work through the equivalent of a law school exam every time a defendant tries to escape procedural default.

*McKinnon v. Lockhart*, 921 F.2d 830, 833 n.7 (8th Cir. 1990) (quoting Jeffries & Stuntz, *Ineffective Assistance and Procedural Default in Federal Habeas Corpus*, 57 U.Chi.L.Rev. 679, 690 (1990)). *See also Williams v. Norris*, 612 F.3d 941, 953 (8th Cir. 2010). In this instance, we find it wiser and a better use of judicial resources to forego the procedural default analysis and address the merits of claims 2, 3, and 4.

**Claim One: Holloway's appellate attorney was ineffective when he abandoned ineffective assistance of trial counsel claims in the Rule 37 appeal.**

We have previously recited the history of Holloway's state court postconviction proceedings. In brief, his Rule 37 petition alleging ineffective assistance of trial counsel was denied by the trial court after a hearing. Holloway, through his habeas counsel, appealed this finding, and was allowed to proceed with the appeal of the trial court's denial of his Rule 37 petition, despite counsel's failure to meet filing deadlines. Ultimately, the Arkansas Supreme Court found he had abandoned his claims of ineffective assistance of counsel raised in the Rule 37 petition because he failed to make arguments supporting his claims in the appellate briefs. Holloway now seeks habeas corpus relief based upon the alleged negligence of his Rule 37 attorney in abandoning his ineffective assistance

4

of trial counsel claims on appeal.

There is no constitutional right to an attorney in Rule 37 postconviction proceedings, unlike the constitutional guarantee of counsel in criminal proceedings. *Coleman v. Thompson*, 501 U.S. 722 (1991). Holloway argues that *Martinez v. Ryan*, 566 U.S. 1 (2012), provides a path to our consideration of his first ground for relief, as well as his other claims. This argument has been addressed by the Eighth Circuit Court of Appeals:

> Because "[t]here is no constitutional right to an attorney in state post-conviction proceedings," *Coleman*, 501 U.S. at 752, 111 S.Ct. 2546, the *Martinez* Court announced the following:
>
>> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.
>
> 566 U.S. at 17, 132 S.Ct. 1309. In other words, "counsel's ineffectiveness [or the absence of counsel] in an initial-review collateral proceeding qualifies as cause for a procedural default." Id. at 13, 132 S.Ct. 1309. The Court reasoned that "[w]hen an attorney errs [or there is no attorney] in initial-review collateral proceedings, it is likely that no state court at any level will hear the prisoner's claim." Id. at 10, 132 S.Ct. 1309. Further:
>
>> As Coleman recognized, an attorney's errors during an appeal on direct review may provide cause to excuse a procedural default; for if the attorney appointed by the State to pursue the direct appeal is ineffective, the prisoner has been denied fair process and the opportunity to comply with the State's procedures and obtain an adjudication on the merits of his claims. ... The same would be true if the State did not appoint an attorney to assist the prisoner in the initial-review collateral proceeding. The prisoner, unlearned in the law, may not comply with the State's procedural rules or may misapprehend the substantive details of federal constitutional law. While confined to prison, the prisoner is in no position to develop the evidentiary basis for a claim of ineffective assistance, which often turns on evidence outside the trial record.
>
> Id. at 11–12, 132 S.Ct. 1309. The primary concern evident from this analysis is the prisoner's potential inability—caused by ineffective counsel or a complete

5

lack of counsel altogether—to present the merits of his ineffective assistance claim to some court with the authority to decide the matter.

The Court was quick to limit its holding, however, noting that "[t]he rule of Coleman governs in all but the limited circumstances recognized here." Id. at 16, 132 S.Ct. 1309. Indeed, the Court expressly stated that "[t]he holding in this case does not concern attorney errors in other kinds of proceedings, *including appeals from initial-review collateral proceedings*." Id. (emphasis added). The Court emphasized that "[w]hile counsel's errors in these proceedings preclude any further review of the prisoner's claim, the claim will have been addressed by one court, [such as] ... the trial court in an initial-review collateral proceeding." Id. at 11, 132 S.Ct. 1309. Thus, it is clear that the *Martinez* exception applies only if the procedural default occurs during the *initial-review* of the ineffective assistance claim. Id. at 16, 132 S.Ct. 1309

*Martinez* is therefore inapposite to the present case for two reasons. First, Franklin's procedural default occurred when he failed to appeal the state circuit court's denial of his Rule 29.07 motion within ten days or to file a motion for late notice of appeal within twelve months, as required by Missouri law. The default therefore occurred during the appeal from the initial-review proceeding rather than during the proceeding itself. Cf. *Arnold v. Dormire*, 675 F.3d 1082, 1087 (8th Cir. 2012) ("*Martinez* offers no support ... for the contention that the failure to preserve claims on appeal from a postconviction proceeding can constitute cause."); see also *Norris v. Brooks*, 794 F.3d 401, 405 (3d Cir. 2015), cert. denied, ––– U.S. ––––, 136 S.Ct. 1227, 194 L.Ed.2d 225 (2016) ("Because [defendant's] claim of ineffective assistance of trial counsel was presented on initial collateral review and only waived on collateral appeal, we hold that *Martinez* does not justify relief ...."). Second, Franklin does not complain about his ability to present his claim to the state circuit court; he argues only that his inability to timely appeal that court's decision constitutes cause because he was not represented by an attorney. But Franklin "has already had his day in court; deprivation of a second day does not constitute cause." *Arnold*, 675 F.3d at 1087.

As a result, "*Coleman* governs." *Martinez*, 566 U.S. at 16, 132 S.Ct. 1309.

*Franklin v. Hawley*, 879 F.3d 307, 312–13 (8th Cir. 2018).

Here, Holloway, assisted by counsel, presented his ineffective assistance of trial counsel claims at his Rule 37 hearing. Since there was no procedural default during the initial review of Holloway's ineffective assistance of counsel claims, *Martinez* offers no end run around the general rule that there is no constitutional right to an attorney in Rule 37 postconviction proceedings. Further, *Martinez* does not provide a path around the procedural lapse on appeal of the Rule 37 trial

6

court decision. The first claim raised by Holloway is not a cognizable habeas corpus claim, as he is without a constitutional guarantee of effective counsel on his appeal of his postconviction petition.

**Claims Two, Three, and Four: Holloway's trial attorney failed to seek the suppression of evidence connected with the seizure of his cellphone, misinformed him about the amount of time he would serve as a result of his guilty plea, and failed to provide information to him about his right to challenge and exclude cellphone data from a trial.**

While *Franklin v. Hawley*, 879 F.3d 307 (8th Cir. 2018) supports the proposition that Holloway's second, third, and fourth[4] claims are procedurally defaulted and should be dismissed on that basis, we continue to the merits of these claims.

Holloway, represented by counsel, filed a Rule 37 petition which cited *Strickland v. Washington*, 466 U.S. 668 (1984), as the case which set the standard for assessing effective assistance of counsel. Docket entry no. 9-2, pages 226-230. The prosecution responded, noting that effectiveness of counsel in a guilty plea case involved a variation on *Strickland*, as set forth in *Hill v. Lockhart*, 474 U.S. 52 (1985). The prosecution correctly stated the standard as requiring Holloway to show an error by his trial attorney, and that but for the attorney's error, it was reasonably probable that he would not have pleaded guilty and would have insisted on going to trial.

Holloway's attorney called three witnesses at the Rule 37 hearing: Claiborne Ferguson ("Ferguson"), Holloway, and his mother, Lisa. Ferguson represented Holloway on the charges which led to his guilty plea. In pertinent part, Ferguson testified that he did not discuss the plea or possible sentence in the presence of Holloway's parents, that he reviewed the plea agreement with Holloway in detail, that he did not tell Holloway "how much time he would do," that Holloway admitted shooting Hubert Jackson, and that he determined that the cell phone information was

---

[4]While Holloway describes claims two, three, and four with slightly different language than used in state court, we construe the three claims raised here as the same as the claims raised in his Rule 37 petition.

legally obtained by law enforcement and could not have been suppressed.. Docket entry no. 9-2, pages 390-450. Ferguson, an experienced criminal defense attorney who was on the Tennessee Association of Criminal Defense Lawyers Death Penalty committee, stated he filed about twenty-five motions in the case, including a motion to suppress damaging texts sent by Holloway.[5] Ferguson detailed his analysis of the manner in which the prosecution obtained the cell phone data, and opined that he had no legal basis to successfully suppress the cell phone data. Ferguson described the data as damaging,[6] and stated he saw no way "I could have gotten around it. . . When you see it [the data tracking the location of Holloway's cell phone] you feel like you got kicked in the stomach." Docket entry no. 9-2, page 428.

Holloway testified he entered the guilty plea because Ferguson said it would "save my life." Docket entry no. 9-2, page 454. Holloway stated he rode in the car's interior, not in the trunk, with co-defendant Jeremy Davis ("Davis") and the victim. According to Holloway, Davis shot the victim. Holloway also testified Ferguson informed him he would only serve twenty-three years of the thirty-five year sentence. Holloway recalled the day of the guilty plea:

> Q. Where were you when you told him [Ferguson] you didn't want to accept the plea?
> A. In the room with the prosecutors at the jail. They had a little room where they was talking to me, going over the evidence they think they have against me, and letting me know what they was willing to give me. I told them no. They sent me to the courthouse out front, this big courthouse, to get a new

---

[5] Holloway, in the trunk of a vehicle driven by his co-defendant, texted asking "are we there yet?" Ferguson testified he desired to exclude this text "because there's a text saying are we there yet, is it time to get out, and it's like three seconds before he gets out of the trunk and shoots the guy in the head. . ." Docket entry no. 9-2, page 407.

[6] In addition to the damaging cell phone data, Ferguson and Holloway faced an uphill battle in countering the evidence from the Arkansas State Crime Lab showing the victim had been shot with two different guns. Docket entry no. 9-2, page 491. This evidence is at odds with Holloway's later assertion that he was on the scene but did not shoot the victim.

8

> trial – to get my trial date set, and when we found out we didn't have court at the big house, I came back to the jail. They brought me back in to the room and started asking me to plea out to 35. I told them no initially and he [Ferguson] told me that he had talked to my family, they wanted me to take the 35 because it's better than me losing my life. And I wrestled around with it for a while and didn't want to take it, but I wound up saying I'll take it.
>
> Q.   Why didn't you talk to your family about it?
> A.   He [Ferguson] said he had already talked to them.

Docket entry no. 9-2, page 456.

Lisa Holloway testified she did not speak with her son before he entered the guilty plea because Ferguson would not allow her to do so. Further, she stated Ferguson informed her that if her son entered the guilty plea he would be required to "do 23 more and no more" to satisfy the 35 year sentence. Docket entry no. 9-2, page 474.

On December 16, 2014, the trial court entered a brief Order denying Rule 37 relief. Docket entry no. 9-2, page 254. The trial judge considered the following items: the petition, the state's response, the pleadings, the testimony offered at the hearing, the evidence and exhibits, the arguments of the attorneys, the Arkansas Rules of Criminal Procedure, United States Supreme Court and Arkansas case law, and all other matters before the Court. The trial court concluded the evidence was insufficient to show an entitlement to relief, and denied relief.

As previously described, the trial court's Rule 37 ruling was not ultimately considered and affirmed on appeal, since the Supreme Court of Arkansas found Holloway abandoned his claims of ineffective assistance of counsel. Nevertheless, Holloway's allegations of ineffective assistance of counsel were considered and adjudicated in state court, even if only by the trial court.[7] Adjudicated

---

[7] For the purposes of 28 U.S.C. § 2254(d)(1), (2), the adjudication by the trial court suffices as an adjudication on the merits. *Worthington v. Roper*, 631 F.3d 487, 497 (8th Cir. 2011). *See also Wilson v. Sellers*, 138 S.Ct. 1188 (April 17, 2018) (when a state appellate court affirms without reasons a federal habeas court should "look through" the appellate ruing to the last reasoned decision

claims are considered under the deferential standard set forth in 28 U.S.C. § 2254. When the state court has ruled on the merits of a petitioner's claims, a writ of habeas corpus may not be granted unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court." 28 U.S.C. § 2254(d)(1), (2). The United States Supreme Court offers guidance in interpreting the statute:

> A state court decision will be "contrary to" our clearly established precedent if the state court either "applies a rule that contradicts the governing law set forth in our cases," or "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." A state court decision will be an "unreasonable application of" our clearly established precedent if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case."
>
>     . . . Distinguishing between an unreasonable and an incorrect application of federal law, we clarified that even if the federal habeas court concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable.

*Penry v. Johnson*, 532 U.S. 782, 792-93 (citations omitted).

Although the trial court's order was succinct, it need not have explicitly discussed the intricacies of ineffective assistance of counsel law. A reasonable application of established federal law does not require citation of the pertinent United States Supreme Court cases, such as *Hill v. Lockhart*, 474 U.S. 52 (1985). In fact, a reasonable application does not even require *awareness* of *Hill* or other cases, so long as neither the reasoning nor the result of the state-court decision contradicts the relevant cases. *Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam). So, our inquiry is whether the trial court's decision contradicted applicable

---

rendered in state court).

10

Supreme Court precedent in its reasoning or result. *Cox v. Burger*, 398 F.3d 1025, 1029–30 (8th Cir. 2005).

The trial court's reasoning or result did not contradict the findings of *Hill v. Lockhart*, 474 U.S. 52 (1985) or any other precedent. The evidence adduced at the Rule 37 hearing presented the trial judge with a credibility question regarding whether Ferguson promised Holloway a 23 year sentence, and with a legal question concerning the possibility of excluding the cell phone data. The trial judge could and obviously did credit Ferguson's testimony regarding what he told Holloway about how much time he would serve. The trial judge also accepted Ferguson's position that there was no basis to suppress cell site data obtained legally by the prosecution. Ferguson's testimony and his actions showed that suppressing the cell phone data was explored but without success. Holloway does not counter Ferguson on this point, and does not suggest a legal basis to exclude the cell phone data. Consequently, there is no showing that Holloway could have gone to trial without the prospect of facing the damaging cell phone data showing his presence at the crime scene. These findings do not contradict in any way the findings, reasoning, or result in *Hill,* and are findings the judge could reasonably make based on the evidence presented at the hearing. Holloway fails to demonstrate the state trial court's ruling was contrary to or an unreasonable application of federal law, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in state court. Holloway fails to prove attorney error which, had it not occurred, triggered a reasonable probability that Holloway would not have pleaded guilty and insisted on going to trial.

In summary, even setting aside the issue of procedural default, Holloway's three claims of ineffective assistance of trial counsel are without merit. These claims were denied in state court, and

he fails to satisfy the statutory requirements, under 28 U.S.C. § 2254(d)(1), (2), to entitle him to habeas corpus relief.

### Claim five: Actual Innocence.

Paragraph 18 of Holloway's petition reads in its entirety, "Actual innocence." This paragraph is under the heading "Facts Entitling Petitioner to Relief." Docket entry no. 2, page 10. In order to prove actual innocence, the Supreme Court sets forth the requirements:

> To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful.

*Schlup v. Delo*, 513 U.S. 298, 324 (1995). Holloway "must show that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt." 513 U.S. at 327. This very high standard is heightened further when a petitioner such as Holloway enters a guilty plea. Solemn declarations in open court carry a strong presumption of verity. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Holloway's cursory assertion of actual innocence is without merit, as he fails to submit any new evidence of any kind. Holloway's own testimony at the Rule 37 hearing varied from the version offered when he entered the guilty plea. However, this different version does not amount to new, reliable evidence as envisioned by *Schlup*. There is no merit to the claim of actual innocence.[8]

For the reasons stated herein, we recommend the petition for writ of habeas corpus be

---

[8]Typically, actual innocence is raised in habeas corpus cases to overcome a procedural bar or defeat the statute of limitations and provide a path or open a gateway to consideration of claims which would otherwise be barred. *McQuiggin v. Perkins*, 569 U.S. 383 (2013). A freestanding claim of actual innocence is not recognized as a basis for habeas corpus relief. *Herrera v. Collins*, 506 U.S. 390 (1993).

dismissed and the relief requested be denied.

Pursuant to 28 U.S.C. § 2253 and Rule 11 of the Rules Governing Section 2554 Cases in the United States District Court, the Court must determine whether to issue a certificate of appealability in the final order. In § 2254 cases, a certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(1)-(2). The Court finds no issue on which petitioner has made a substantial showing of a denial of a constitutional right. Thus, we recommend the certificate of appealability be denied.

IT IS SO ORDERED this 13th day of June, 2018.

UNITED STATES MAGISTRATE JUDGE